**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| LEIGH J. BECHTLE, | : | | |
| Plaintiff, | : | CIVIL ACTION | |
| | : | | |
| v. | : | NO. 2:20-CV-05803 | |
| | : | | |
| COUNTY OF DELAWARE, | : | | |
| Defendant. | : | | |

**ORDER**

**AND NOW**, this _____ day of _____, 2020 upon consideration of Defendant, County of Delaware's Motion for Summary Judgment and Memorandum of Law in Support thereof, and any response(s) thereto, it is hereby **ORDERED** and **DECREED** that Defendant's Motion for Summary Judgment is **GRANTED**.

Judgment is hereby entered in favor of Defendant and against Plaintiff, and all claims asserted by Plaintiff against Defendant are hereby **DISMISSED WITH PREJUDICE.**

BY THE COURT:

_____
                                                    **J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| LEIGH J. BECHTLE, | | : | |
| | Plaintiff, | : | CIVIL ACTION |
| | | : | |
| v. | | : | NO. 2:20-CV-05803 |
| | | : | |
| COUNTY OF DELAWARE, | | : | |
| | Defendant. | : | |

**DEFENDANT, COUNTY OF DELAWARE'S MOTION FOR SUMMARY JUDGMENT**

Defendant, County of Delaware., by and through it's counsel, Marshall Dennehey Warner Coleman and Goggin, respectfully move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), on the grounds that there is no evidence in this case upon which a jury could find in favor of Plaintiff on his claims against Defendant; Defendant is thereby entitled to judgment as a matter of law. In support thereof, Defendant submits the attached Memorandum of Law and Statement of Undisputed Facts, which are incorporated herein by reference.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

Date:  October 1, 2021          By: _____

John P. Gonzales, Esquire
Attorney for Defendants
Identification No.:  71265
2000 Market Street, 24th Floor
Philadelphia, PA  19103
(215) 575-2600
E-mail:  jpgonzales@mdwcg.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEIGH J. BECHTLE, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2:20-CV-05803 |
| | : | |
| COUNTY OF DELAWARE, | : | |
| Defendant. | : | |

**DEFENDANT, COUNTY OF DELAWARE'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.**     **INTRODUCTION**

Plaintiff, Leigh J. Bechtle ("Plaintiff"), brings claims against Defendant, County of Delaware (the "County") for disability discrimination and failure to accommodate pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended by the ADA Amendments Act of 2008 ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* ("Rehab Act"), and age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 629 *et seq.* ("ADEA"), arising out of Plaintiff's termination from his employment with the Delaware County Public Defender's Office on or about August 17, 2020. However, Plaintiff has failed to adduce any evidence to support his claims against the County. Specifically, Plaintiff has failed to establish that: (1) he is a qualified individual within the meaning of the ADA; (2) that Plaintiff ever desired or requested an accommodation for his disability; (3) a causal connection between Plaintiff's age and his termination; or (4) that the County's legitimate non-discriminatory reason for his termination was pretext. Therefore, Plaintiff's ADA, Rehab Act and ADEA claims against the County fail as a matter of law.

## II.  STATEMENT OF FACTS

Defendant incorporates by reference their accompanying Statement of Undisputed Facts as if same were set forth fully herein at length.

## III.  LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, Answers to Interrogatories, and admissions, together with the affidavits, if any, show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When determining a motion for summary judgment, the court views the facts and draws all reasonable inferences in favor of the non-moving party. *Whiteland Woods, L.P. v. Twp. of West Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999). The moving party bears the initial burden of showing that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. *Taylor v. Phoenixville Sch. Dist.*, 113 F.Supp.2d 770, 773 (E.D. Pa. Sept. 19, 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (hereinafter "*Taylor II*").

When the moving party has carried its burden under Federal Rule of Civil Procedure 56(c), it's opponent must show specific facts demonstrating a genuine issue of material fact that amounts to more than some metaphysical doubt. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A non-moving party who merely relies on "unsupported assertions, conclusory allegations or mere suspicions" does not demonstrate a genuine issue for trial. *Taylor II*, 113 F.Supp.2d at 773 (relying on *Anderson*, 477 U.S. at 249). Furthermore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A moving party is entitled to judgment as a matter of law "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The non-moving party's showing must be supported by concrete evidence in the record. *Id.* at 322–23. "If the evidence is merely colorable, . . . or is not significantly probative, . . .summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. St. Gobain Corp.*, 323 F.Supp. 2d 637, 642 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson and Co.*, 554 F.2d 566, 573 (3d Cir. 1976)).

## IV.     LEGAL ARGUMENT

### A.     Plaintiff's ADA and Rehab Act Claims Fail as a Matter of Law.

Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). Accordingly, a plaintiff may bring two types of discrimination claims under the ADA: (1) disparate treatment based on a plaintiff's disability, and; (2) failure to accommodate a plaintiff's disability. *See Ruggiero v. Mount Nittany Med. Ctr.*, 736 Fed.Appx. 35, 39 (3d Cir. 2018); *Hollingsworth v. R. Home Prop. Mgmt., LLC*, No. 19-2754, 2020 WL 6286701, at *6 (E.D. Pa. Oct. 27, 2020). While Plaintiff's Amended Complaint alleges that the County failed to accommodate his disability, among other claims, Plaintiff alleges in his deposition testimony numerous times that he did not need an accommodation to perform the essential functions of his position. *See* Ex. C, Pl. Dep., 49: 7–16; 62: 21–25; 63: 1–4; 156: 17–24. Despite this critical inconsistency, the County addresses both types of discrimination claims for purposes of this Motion for Summary Judgment.

"The substantive standards for determining liability [under the ADA and Rehabilitation Act] are the same." *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. March 3, 2021) (quoting *McDonald v. Pa. Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)) (internal quotations omitted). Accordingly, the County analyzes both Plaintiff's ADA and Rehab Act claims "in the same breath." *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009).

### 1.   Plaintiff Failed to Establish that He is a Qualified Individual Under the ADA.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1995).

It is well established in the Third Circuit that the court will employ the analytical framework of *McDonnell Douglas v. Green*, 411, U.S. 792 (1973), as a guide when determining a motion for summary judgment on disparate treatment claims brought under the ADA. *See Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996) (citing *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995)). Accordingly, Plaintiff has the initial burden of setting forth sufficient evidence to establish each element of a prima facie disparate treatment claim. *See id.* In order to show a prima facie claim of disparate treatment under the ADA, a plaintiff must establish: (1) he is "disabled" within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations; and (3) he suffered an adverse employment action as a result of discrimination. *Taylor*, 184 F.3d at 306 (citing *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998)). The burden is on the plaintiff to show that he is a "qualified individual" within the meaning of the ADA. *Buskirk*, 307 F.3d at 168.

Summary judgment must be granted in favor of an employer where the employee fails to show that he "with or without reasonable accommodation, can perform the essential functions of the employment position . . . ." 42 U.S.C. § 12111(8); *see Gaul*, 134 F.3d at 581.

A function is considered an "essential function" of a position where it is considered a fundamental duty of the employment position. 29 C.F.R. § 1630.2(n)(1). Consideration is given to the employer's judgment as to what functions of a job are essential—the court will consider such evidence as the employer's written job descriptions prepared before advertising the position, the amount of time spent on the job performing the function, and whether a position exists to perform a certain function. See 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(2)–(3)(i)–(iii). If a plaintiff needs an accommodation in order to perform the essential functions of his position he "must show, as part of his burden of persuasion, that an effective accommodation exists." *Gardner v. Sch. Dist. of Phila.*, 636 Fed.Appx. 79, 83–84 (3d Cir. 2015) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 670 (3d Cir. 1999)).

Assuming *arguendo*, Plaintiff can establish the first and third prong of his prima facie claim, Plaintiff's claim fails as a matter of law because he has failed to show that he is a "qualified individual" under the ADA. At the time of his termination, Plaintiff was employed as an attorney in Appellate Unit of the County Public Defender's Office. *See* Ex. F, DiMatteo Dep., at 34: 19–25; 35: 1–8. As an experienced attorney in the Appeals Unit, Plaintiff was expected to be capable of complying with all "1925(b) Orders," reviewing court transcripts, identifying issues, preparing the "statement of matters" complained of on appeal and competently preparing complex legal briefs to submit to the court. *See* Ex. I, Papi Dep., at 17–18; 19: 1–7. Assistant Public Defenders are also expected to take on a full caseload so as to allow for the equal division of work between

all attorneys in the unit. *See* Ex. F, DiMatteo Dep., 17–20 (Interim Director, Skip DiMatteo discussing the ongoing concern regarding the equitable distribution and assignment of cases).

Although Plaintiff did not prepare an appellate brief during his employment with the Public Defender's Office, it is clear that Plaintiff is not able to competently prepare legal documents based on his submitted memoranda. *See* Ex. O; Ex. R. Plaintiff' asserts that he spent eight to ten hours a day for six to seven days researching and drafting each individual memorandum. Ex. C, Pl. Dep., at 115; 127. Yet, despite spending over 40 hours on each submission, Plaintiff's memoranda are substandard on their face. *See* Ex. O; Ex. R. The memoranda are poorly formatted, lacking any comprehensible legal analysis, riddled with grammatical errors and practically unintelligible in sections. *See* Ex. B, Welsh Dep., at 46–48; Ex. I, Papi Dep., at 14–21. How could Plaintiff take on a full case load, competently prepare legal briefs for each individual case that identify and analyze complex legal and factual issues, and submit to them to the court pursuant to strict deadlines—all potentially with a client's liberty at stake—if Plaintiff cannot competently draft a basic legal memorandum free of grammatical errors and analytical incoherencies? Accordingly, Plaintiff failed to demonstrate that he could perform the essential functions of his position as an attorney in the Public Defender's Office. Therefore, Plaintiff's disparate treatment claim under the ADA fails as a matter of law.

### 2.   Plaintiff Failed to Establish that Plaintiff Requested or Needed a Reasonable Accommodation Because of Plaintiff's Disability.

In order to establish a prima facie failure to accommodate claim, the plaintiff must prove: (1) the employer had knowledge of the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking such accommodations or assistance; and (4) the employee could

have been reasonably accommodated but for the employer's lack of good faith. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017); *Taylor*, 184 F.3d at 319-20.

An employee must establish that he requested an accommodation for his disability in order to satisfy the second element of a failure to accommodate claim. *Jones v. United Parcel Service*, 214 F.3d 402, 408 (3d Cir. 2000). The burden is always on the employee or a representative to notify the employer of the employee's disability and desire for an accommodation. *Drozdowski v. Norland Lincoln Mercury*, 321 Fed.Appx. 181, 185 (3d Cir. 2009) (citing *Taylor*, 184 F.3d at 313). The employee must give the employer enough information so that the employer is fairly on notice that the employee desires an accommodation. *Jones*, 214 F.3d at 408 (citing *Taylor*, 184 F.3d at 313). An employer is only obligated to participate in the interactive process after the employee notifies them of his desire or need for a reasonable accommodation. *See Tielle v. Nutrition Grp.*, 810 Fed.Appx. 160, 162 (3d Cir. 2020); *Taylor*, 184 F.3d at 313.

Failure to notify the employer that an accommodation is desired is fatal to the employee's failure to accommodate claim. *See Jones*, 214 F.3d 408 (dismissing the plaintiff's failure to accommodate claim because the plaintiff failed to produce evidence that the defendant should have known that the plaintiff sought an accommodation)*; Tielle*, 810 Fed.Appx. at 162 (affirming the district court's dismissal of the plaintiff's failure to accommodate claim in part because the plaintiff couldn't recall whether she ever asked to lean on a food cart as a reasonable accommodation, which was the cause of her termination).

Plaintiff has failed to show that he requested a reasonable accommodation and therefore, has failed to establish a prima facie failure to accommodate claim as a matter of law. Although Plaintiff's Complaint alleges that the County failed to accommodate his disability, Plaintiff repeatedly and consistently asserts that he did not ever request or need an accommodation to

perform his job functions. *See* Ex. C, Pl. Dep., at 49: 7–16; 62: 21–25; 63: 1–4; 156: 17–24. Therefore, Plaintiff's failure to accommodate claim under the ADA fails as a matter of law and must be dismissed.

### 3.    Plaintiff Failed to Establish that Defendant's Legitimate Non-Discriminatory Reason for Plaintiff's Termination was Pretext.

Summary judgment should be granted in favor of an employer who demonstrates a legitimate non-discriminatory reason for the employee's termination unless the employee can: "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Assuming for the purposes of this motion only, that Plaintiff can establish a prima facie disparate treatment claim, Plaintiff's claim still fails as a matter of law because he cannot demonstrate that the County's legitimate non-discriminatory reason for his termination was pretextual. The burden of proving intentional discrimination always rests with the plaintiff. *Fuentes*, 32 F.3d at 763 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981)). However, once a plaintiff has established a prima facie claim for discrimination under the ADA, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. An employer satisfies their burden by showing evidence which, taken as true, would permit the factfinder to conclude that there was a non-discriminatory reason for the employee's termination. *Fuentes*, 32 F.3d at 763 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993)).

Once an employer meets it's "relatively light burden" of establishing a legitimate non-discriminatory reason for terminating the employee, the burden of production shifts back to the

employee to show that the employer's explanation is pretextual. *Id.* In order to prove that an employer's explanation is pretextual, an employee must "cast sufficient doubt upon . . . the legitimate reason[ ] proffered by the defendant so that a factfinder could reasonably conclude that [the] reason was a fabrication, or allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Flory v. Pinnacle Health Hosp.*, 346 Fed.Appx. 872, 877 (3d Cir. 2009) (quoting *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (internal quotations omitted) (citations omitted).

An employer is not liable where the employer's decision was simply wrong or mistaken; the employee must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' . . . ." *Fuentes*, 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)) (internal quotations omitted). "While this standard places a difficult burden on the plaintiff, it arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs." *Id.* (internal quotations omitted).

The County has met it's "relatively light" burden of production by showing that it had a legitimate non-discriminatory reason for terminating Plaintiff—Plaintiff's legal memoranda were well below the standard expected of an attorney in the Public Defender's Office. *See* Ex. B, Welsh Dep., at 46–48; *see also* Ex. S. Director of the Public Defender's Office, Christopher Welsh testified that Appellate Unit Chief and First Assistant Defender, Steven Papi and Interim Director, Emilio "Skip" DiMatteo told Mr. Welsh that they were concerned about Plaintiff's ability to "handle the workload of an appellate attorney competently." Ex. B, Welsh Dep., at 40.

Accordingly, Mr. Welsh assigned two research projects requesting analysis of two separate legal issues over the course of approximately two weeks. *See* Ex. M; Ex. P. As discussed above, Plaintiff's completed memoranda lacked any substantive or coherent legal analysis. *See* Ex. B, Welsh Dep., at 41–44. Essentially, as acknowledged by Appellate Unit Chief, Steven Papi, Plaintiff's memoranda consisted mostly of copied and pasted statutes and case law without any analysis to address the legal question presented. *See* Ex. I, Papi Dep., at 14–21. As such, Plaintiff was terminated for a legitimate non-discriminatory reason. *See* Ex. S.

Plaintiff failed to adduce any evidence that would allow the fact finder to infer that the County's proffered reason for Plaintiff's termination is a "mere fabrication" or that Plaintiff's disability was the real motivating factor in his termination. *See generally* Ex. C, Pl. Dep. Not one witness could point to a comment, remark, joke, or any other evidence that Mr. Welsh ever made relating to Plaintiff's disability or any other employee's disability. *See, e.g.*, *id.* at 165: 11–15. Moreover, Mr. Welsh has consistently articulated and justified the reason for Plaintiff's termination and no evidence of record suggests that there are any "implausibilities, inconsistencies, incoherencies, or contradictions" in the County's legitimate non-discriminatory reason for Plaintiff's termination that could create an inference of discrimination. *See Fuentes*, 32 F.3d at 765. When asked, Plaintiff's only evidence that his termination was based on his disability was "I believe it was." *See id.* at 56: 25; 57–58. However, Plaintiff's subjective belief, without more, is insufficient to create a triable issue of fact and prevent summary judgment. *See Frost v. PetSmart, Inc.*, No. 05-6759, 2007 WL 602990, at *5 (E.D. Pa. 2007) (holding that a plaintiff's "own unsubstantiated, subjective beliefs or suspicions alone would not suffice to persuade a rational trier of fact that age was a factor in the termination decision.").

Plaintiff failed to bring forth any evidence that the County's legitimate non-discriminatory reason for Plaintiff's termination was pretext; therefore, Plaintiff's ADA claims fail as a matter of law and must be dismissed.

### B.        Plaintiff's ADEA Claim Fails as a Matter of Law.

Count III of Plaintiff's Complaint attempts to bring an age discrimination claim against the County under the ADEA. Plaintiff's ADEA claims fail as a matter of law because Plaintiff failed to establish that his age was the determinative factor in his termination or adduce sufficient evidence that would allow the fact finder to reasonably infer that the County's legitimate non-discriminatory reason for terminating Plaintiff was pretext. Accordingly, Count III of Plaintiff's Complaint should be dismissed as a matter of law.

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The Supreme Court has made clear that a plaintiff bringing a claim under the ADEA must show that his "age was the **but-for** cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). Even evidence showing a "substantial negative reliance" on age is not enough to establish a prima facie age discrimination claim. *See id.*

### 1.        Plaintiff Failed to Establish a Prima Facie Age Discrimination Claim Under the ADEA.

To demonstrate discrimination under the ADEA, a plaintiff must prove each element of a prima facie claim by either direct or indirect evidence. *See, e.g.*, *Palmer v. Britton Indus., Inc.*, 662 F.App'x 147, 151 (3d Cir. 2016). To establish an age discrimination claim using direct evidence, the "[d]irect evidence must be sufficient on its own to allow a factfinder to determine that age was

the but-for cause of the termination decision"—*without inference or presumption*. *Id.* (internal quotations omitted) (emphasis in original).

In the absence of direct evidence, a plaintiff must show that: (1) he is at least forty years old; (2) he suffered an adverse employment decision; (3) he was qualified for the position in question; and (4) he was terminated "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999) (citation omitted); *see also Willis v. UPMC Children's Hosp. of Pittsburgh,* 808 F.3d 638, 644 (3d Cir. 2015).

Essential to establishing an age discrimination claim is the plaintiff's ability to demonstrate "some causal nexus between membership in a protected class and the adverse employment decision." *Sarullo v. U.S. Postal Service,* 352 F.3d 789, 798 (3d Cir. 2003); *see also Willis*, 808 F.3d at 646 (citing *Pivirotto v. Innovative Systems*, 191 F.3d 344, 352 (3d Cir. 1999)). When evaluating the plaintiff's proffered evidence, the Third Circuit has held that "stray remarks" by a decisionmaker, which are unrelated to the decision to terminate the plaintiff, are "rarely given great weight, particularly if they were made temporally remote from the date of decision." *Brewer v. Quaker State Oil Refining Co.*, 72 F.3d 326, 333 (3d Cir. 1995); *see also Law v. Harrisburg Area Community College*, No. 1:19-cv-02007, 2021 WL 3472409, at *14 (W.D. Pa. Aug. 6, 2021) (holding that "alleged discriminatory animus, expressed through a sole alleged comment" related to the plaintiff's age was insufficient evidence from which a reasonable factfinder could infer that discriminatory animus was the motivating factor in the defendant's decision); *Ayres v. MAFCO Worldwide LLC*, No. 18-12071, 2020 WL 4218395, at *5 (D. N.J. 2020) (granting summary judgment in favor of the defendant employer because "[n]o reasonable jury could find that the

single statement Plaintiff offers is sufficient to rebut Defendant's nondiscriminatory reason for declining to promote him").

As a threshold matter, Plaintiff has not asserted any direct evidence of age discrimination on the part of the County, the Delaware County Public Defender's Office, or Public Defender Director, Christopher Welsh. *See generally* Ex. C, Pl. Dep. However, even Plaintiff's adduced circumstantial evidence is insufficient to allow the fact finder to infer that Plaintiff's age was the but-for cause of his termination. *Id.* To support his claim, Plaintiff relies on the assertions of another Assistant Public Defender, Vincent Martini, who made similar age discrimination claims after he was terminated from the Public Defender's Office in July 2020. *Id.* at 17:25; 8: 1–10. Yet, Plaintiff admitted that he never heard Mr. Welsh make any disparaging or derogatory remarks regarding Plaintiff's age. *Id.* at 160: 16–23. In fact, not one witness or document, besides Mr. Martini, claims to have ever heard Mr. Welsh make any comments or remarks about an employee's age at all. *See* Ex. F, DiMatteo Dep., at 22:18–20; 23: 3–10 (Mr. DiMatteo insists that he never heard Mr. Welsh make any disparaging remarks about any employee's age and notes that he himself was 72 years old at the time). Even taking Mr. Martini's allegations as true, Mr. Welsh's comment to Mr. Martini about Mr. Martini's age, which was allegedly said in a private meeting not relating to Plaintiff's in any way, several weeks before Plaintiff's termination <u>alone</u> is not sufficient to allow the fact finder to infer but-for discriminatory animus. *See Brewer*, 72 F.3d at 333 (emphasis added).

Plaintiff failed to establish a prima facie ADEA claim and therefore, Plaintiff's ADEA claim fails as a matter of law.

> **2.**     **<u>Plaintiff Failed to Establish that Defendant's Legitimate Non Discriminatory Reason for Plaintiff's Termination was Pretext.</u>**

When a plaintiff relies on circumstantial evidence to establish an age discrimination claim, the court must analyze the evidence through the *McDonnell Douglas* analytical framework.[1] *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308 (1996) (citing *McDonnell Douglas*, 411 U.S. 792) (assuming the application of the Title VII evidentiary framework set forth in *McDonnell Douglas* to the ADEA context is correct).

 Assuming Plaintiff can establish a prima facie case of age discrimination, which Defendant denies, the County may dispel any inference of discrimination by showing a legitimate non-discriminatory reason for discharging Plaintiff. *See Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992); *see also Billet v. CIGNA Corp.*, 940 F.2d 812, 816 (3d Cir. 1991). If the employer meets the relatively light burden of demonstrating a legitimate non-discriminatory reason for the adverse action, the plaintiff must prove by a preponderance of the evidence that the employer's articulated reasons are a pretext for discrimination. *Billet*, 940 F.2d at 816.

In order to prove pretext, a plaintiff must submit "evidence that allows a fact finder to either: (1) disbelieve or discredit the employer's justification; or (2) believe discrimination was more likely than not a 'but-for' cause for the adverse employment action." *Abels v. DISH Network Serv.*, LLC, 507 F. App'x 179, 183 (3d Cir. 2012) (*citing Fuentes*, 32 F.3d at 764). In order to discredit the employer's proffered reason, a plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus

---

[1] The *McDonnell Douglas* prima facie inquiry has been assumed to apply where a plaintiff's age discrimination claim arises under the ADEA and is based on indirect or circumstantial evidence. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (citing *Teamsters v. United States*, 431 U.S. 324, 358, n.44 (1977)) (considering an age discrimination claim under the ADEA and finding that the shifting burdens of proof set forth in *McDonnell Douglas* inapplicable only when a plaintiff presents direct evidence of discrimination); *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming the Third Circuit's "continued application of the *McDonnell Douglas* paradigm in age discrimination cases").

motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Andersen v. Mack Trucks, Inc.*, 118 F. Supp. 3d 723, 741 (E.D. Pa. 2015), *aff'd*, 647 F. App'x 130 (3d Cir. 2016) (quoting *Fuentes*, 32 F.3d at 765). In evaluating the issue of pretext, the court's role is **not** to "rule on the strength of cause for discharge," *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (emphasis added), or "sit as a super-personnel department that reexamines an entity's business decisions." *Outten v. Genesis Health Care, LLC*, No. 13–4708, 2014 WL 3964918, at *11 (E.D. Pa. 2014) (quoting *Brewer*, 72 F.3d at 332). "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *Keller*, 130 F.3d at 1109. Moreover, "[a] co-worker's opinion is not alone sufficient to establish that the reasons for an employer's adverse action were pretextual." *Oliver v. Clinical Practices of Univ. of Pa.*, 921 F.Supp.2d 434, 450–451 (E.D. Pa. 2013) (citing *Martin v. Health Care & Ret. Corp.*, 67 Fed.Appx. 109, 113–14 (3d Cir. 2003)).

The County has more than met it's burden in demonstrating that Plaintiff was terminated for a legitimate non-discriminatory reason. As thoroughly discussed above, Plaintiff's legal memoranda fell well below the standard expected of an attorney in the Public Defender's Office. *See* Ex. B, Welsh Dep., at 41–44. Similarly to his ADA claims, Plaintiff failed to adduce sufficient evidence to disbelieve the County's proffered reason for his termination or find that discrimination was "more likely the but-for cause" of Plaintiff's termination. *See Fuentes*, 32 F.3d at 764. Assuming for the purposes of this Motion that Mr. Martini's baseless allegations are true, courts in this Circuit have held that one "co-worker's opinion is not alone sufficient to establish that the reasons for an employer's adverse action were pretextual." *Oliver*, 921 F.Supp.2d at 450–451. Furthermore, Mr. Martini's allegations regarding Mr. Welsh's age-based comments were wholly unrelated to Plaintiff, Plaintiff's legal memoranda, or Plaintiff's ultimate termination. *See* Ex. K,

Martini Dep., at 26: 16–25. As such, Plaintiff failed to bring forth sufficient evidence to demonstrate that the County's proffered reason for his termination was pretext and Plaintiff's ADEA claim must be dismissed with prejudice.

## V.       CONCLUSION

Based upon the aforementioned reasons, the Court should grant Defendant's Motion for Summary Judgment, enter judgment in favor of Defendant on all counts, and dismiss any and all claims against Defendant, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

Date: October 1, 2021          By: _____

John P. Gonzales, Esquire
Attorney for Defendants
Identification No.: 71265
2000 Market Street, 24th Floor
Philadelphia, PA 19103
(215) 575-2600
E-mail: jpgonzales@mdwcg.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LEIGH J. BECHTLE,     :
       Plaintiff,  :  CIVIL ACTION
            :
    v.      :  NO. 2:20-CV-05803
            :
COUNTY OF DELAWARE,   :
       Defendant. :

---

**DEFENDANT, COUNTY OF DELAWARE'S STATEMENT OF UNDISPUTED FACTS**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

  Defendant, County of Delaware, by and through it's undersigned counsel, respectfully submit this Statement of Undisputed Facts in Support of it's Motion for Summary Judgment in accordance with the Policies and Procedures of the Honorable Michael M. Baylson.

**I.**  **DELAWARE COUNTY'S PUBLIC DEFENDER'S OFFICE**

  1. The Delaware County Public Defender's Office provides legal representation to indigent adults and children accused of crimes in Delaware County who cannot afford a private attorney. *See* Delaware County Public Website, (Oct. 1, 2021, 9:04 AM), https://www.delcopa.gov/departments/publicdefender.html.

  2. The Public Defender's Office represents thousands of clients every year, including juveniles in Juvenile Court, who have been charged with crimes spanning from minor theft to murder. *Id.*; *see also* Pl. Compl., ECF No. 1, attached hereto as Exhibit "A," at ¶¶ 6–7.

  3. Attorneys in the Public Defender's Office routinely represent clients who are facing significant penalties, including lengthy prison sentences, if convicted of the crimes charged. *See* Ex. A.

4.   Prior to July 2020, the Public Defender's Office was structured so that only the Director of the Public Defender's Office and the First Assistant Public Defender held management authority over the office. *See* Christopher Welsh Dep. Tr., attached hereto as Exhibit "B," at 31–32.

5.   In addition, each Common Pleas courtroom was assigned a Public Defender Trial Team Leader who would assign cases to the other attorneys, or "Assistant Public Defenders" in the courtroom. *See id.*

6.   The office is divided into units or departments which focus the Assistant Public Defenders' representation of clients to specific areas—for example: the Juvenile Unit and the Appeals Unit. *See id.*

## II.   PLAINTIFF'S EMPLOYMENT WITH THE PUBLIC DEFENDER'S OFFICE

7.   Plaintiff, Leigh J. Bechtle ("Plaintiff") began his employment with the County of Delaware's Public Defender's Office as an Assistant Public Defender in the Motions Department on or around August 11, 2014. *See* Pl. Dep. Tr., attached hereto as Exhibit "C," at 33: 3–17.

8.   At the time Plaintiff was hired as an Assistant Public Defender, Plaintiff was 65 years old. *See* Ex. C., Pl. Dep., at 12:14–15.

9.   Only a few weeks after Plaintiff began his employment with the Public Defender's Office, Plaintiff suffered from a stroke. *Id.* at 34.

10. Plaintiff was hospitalized and spent several months in rehabilitation receiving inpatient and outpatient therapy while on short term disability leave and a personal leave of absence. *Id.* at 34–35.

11. Plaintiff was able to return to his position as an Assistant Public Defender sometime in or around April 2015. *Id.* at 38.

12. However, Plaintiff continued to suffer adverse effects from his stroke, including difficulty speaking and paralyzation of his left arm. *Id.* at 35: 23–25; 36; 159:15–25; 160: 1–15.

13. When Plaintiff returned to the Public Defender's Office in 2015, Plaintiff was assigned to the Juvenile Unit under the direct supervision of the Juvenile Unit Chief, David DiPasqua. *Id.*

14. Despite the ongoing adverse effects, Plaintiff asserts that he did not request or need an accommodation when he returned to the Public Defender's Office after suffering a stroke. *Id.* 49: 7–16.

15. The Director of the Public Defender's Office at the time was Douglas Roger. *Id.* at 31: 13–20; 38: 7–11.

## III.   PLAINTIFF'S TRANSFER TO THE APPELLATE UNIT

16. On or around February 6, 2020, Judge James Bradley, a Delaware County, Court of Common Pleas Judge in the Criminal Division, reached out to Juvenile Unit Chief, David DiPasqua to express his concerns regarding Plaintiff's ability to zealously represent his clients in court. *See* Email to David DiPasqua, attached hereto as Exhibit "D;" *see also* Email from David DiPasqua Regarding Complaints about Plaintiff's Representation, attached hereto as Exhibit "E."

17. The record demonstrates as follows:

> Judge Bradley came to DiPasqua and complained that at a hearing he could not understand what Mr. Bechtle was saying. He -- Judge Bradley -- did not believe that he was communicating properly or officially with the juvenile clients and Judge Bradley expressed concerns that this juvenile's rights were not being protected.

*See* Emilio DiMatteo Dep. Tr., attached hereto as Exhibit "F," at 26: 1–15; *see also* Ex. E.

18. Judge Bradley was not the only judge to complain about Plaintiff's representation of clients—in or around early 2020, Delaware County Court of Common Pleas Judge Richard Lowe also complained on several occasions to Mr. DiPasqua about Plaintiff's ability to adequately

communicate with and represent his clients. *See* Ex. E; *see also* Emails Between Plaintiff and David DiPasqua Regarding Judge Lowe Complaints, attached hereto as Exhibit "G."

19. In addition, multiple clients and parents of clients complained to Mr. DiPasqua about Plaintiff's representation and requested a different attorney in the Juvenile Unit. *See* Ex. E.

20. On February 6, 2020, Mr. DiPasqua notified Director of the Public Defender's Office, Douglas Roger of the complaints made regarding Plaintiff's representation and suggested that Plaintiff be transferred to the Appellate Unit. *Id.*

21. Before any decisions were made relating to the complaints about Plaintiff, Mr. Roger retired as the Director and Emilio "Skip" DiMatteo took over as the Interim Director of the Public Defender's Office at the Delaware County Counsel's request on February 12, 2020,. *See* Ex. F, DiMatteo Dep., at 12: 1–16.

22. Mr. DiPasqua forwarded his email regarding the complaints about Plaintiff's representation to Mr. DiMatteo via on February 13, 2020. *See* Email from David DiPasqua to Skip DiMatteo, attached hereto as Exhibit "H."

23. Sometime in late February or early March 2020, Mr. DiMatteo decided to transfer Plaintiff from the Juvenile Unit to the Appeals Unit based on Plaintiff's apparent experience. *See* Ex. F, DiMatteo Dep., at 34: 19–25; 35: 1–8.

24. Prior to transferring to the Appeals Unit, Plaintiff never requested an accommodation for his alleged disability and did not believe he needed an accommodation. *See* Ex. C, Pl. Dep., at 62: 21–25; 63: 1–4.

IV.   **PLAINTIFF'S WORK IN APPEALS UNIT**

25. At the time Plaintiff was transferred to the Appeals Unit, Steven Papi was performing dual roles as the Appeals Unit Chief and the First Assistant Defender. *See* Steven Papi Dep. Tr., attached hereto as Exhibit "I," at 11:24; 12.

26. According to Mr. DiMatteo, Mr. Papi was initially "not sure" about Plaintiff's transfer into Appeals. *See* Ex. F, DiMatteo Dep., at 35: 11–25; 36: 1–11.

27. Mr. DiMatteo testified:

> When I made the decision to transfer Leigh to Appeals, Papi was not sure. He didn't know anything more about Leigh's abilities and work habits than I did . . . So he said what I would do is I will not give him a full caseload of appeals. We'll just give him one case to work on, see how that goes, and then we'll give him a caseload. So Leigh was given one case. . . . All he had in his caseload was just this one file.

*Id.*

28. As an attorney in the Appeals Unit, Plaintiff would have been expected to be capable of complying with all "1925(b) Orders," reviewing court transcripts, identifying issues, preparing the "statement of matters" complained of on appeal and eventually, prepare and submit briefs to the court analyzing the legal and factual issues involved. *See* Ex. I, Papi Dep., at 17–18; 19: 1–7.

29. Plaintiff confirmed that he was assigned a single appeal to work on when he first joined the Appeals Unit. *See* Ex. C, Pl. Dep., at 71: 6–25; 72: 1–14.

30. However, Plaintiff also communicated that he was happy to be in the Appeals Unit and enjoyed his position with the Public Defender's Office. *See* Ex. I, Papi Dep., at 22:21–24; 23: 1–12; *see also* Ex. B, Welsh Dep., at 24: 11–16.

31. Soon after Plaintiff's transfer to the Appeals Unit, COVID-19 became a global pandemic and the County issued an Order that County non-essential employees were to work from

home and that those who could not work from home may need to be furloughed. *See* Ex. F, DiMatteo Dep., at 35: 11–25; 36: 1–11.

32. Mr. Di Matteo made the decision to furlough Plaintiff, along with 12 other employees, because Plaintiff only had one file assigned to him and did not have the necessary equipment to work from home. *See id.* at 35: 11–25; 36– 37.

33. Plaintiff was furloughed from April 19, 2020 to June 15, 2020 and was not allowed to perform any work for the County during that time. Ex. C, Pl. Dep., at 75: 5–8.

34. When Plaintiff returned from furlough, he was again assigned only one appeal. *Id.* at 90–92: 1–12.

35. Mr. Papi testified that "the appeals were coming in pretty slowly, during that time there weren't trials going on. There weren't many new appeals, if any. There wasn't a lot of appellate work." Ex. I, Papi Dep., at 27.

## V.  CHRISTOPHER WELSH JOINS THE COUNTY PUBLIC DEFENDER'S OFFICE

36. On or around July 7, 2020, Christopher Welsh was hired as the new Director of the Public Defender's Office. *See* Ex. B, Welsh Dep., at 7: 10–17.

37. Mr. Welsh has many years of experience in criminal law at the Defender's Association of Philadelphia and participated in the preparation of amicus briefs to the Supreme Court of the United States of America in the *Trump v. Vance* case. *See id.* at 25: 21–24; 26–28.

38. Before starting in his position, Mr. Welsh sent an email to the Public Defender's Office introducing himself and assuring the staff that as Director, his priority would be ensuring the best possible advocacy for the office's clients and achieving the best possible results. *See* Email from Christopher Welsh Regarding Introduction and Zealous Advocacy, attached hereto as Exhibit "J."

39. On July 13, 2020, Mr. Welsh met with all of the attorneys in the Public Defender's Office to introduce himself and lay out his plan for the office. *See* Ex. B, Welsh Dep., at 22: 3–17.

40. Mr. Welsh also communicated that he would be changing several longstanding policies at the Public Defender's Office, including no longer allowing Assistant Public Defenders to maintain private practices or represent clients outside of the Public Defender's Office. *See* Ex. F, DiMatteo Dep., at 23: 11–21.

41. Mr. Welsh also held one-on-one meetings with each attorney in the Public Defender's Office in or around this time. *Id.* at 21: 10–24; 24: 1–16; *see also* Ex. C, Pl. Dep., at 78: 14–25; 79: 1–9.

42. One Assistant Public Defender, Vincent Martini testified that Mr. Welsh made a comment about Mr. Martini's age during their one-on-one meeting in July 2020. *See* Ex. C, Pl. Dep., at 82: 23–25; 83–84.

43. In his deposition, Mr. Martini claims that Mr. Welsh's first question to him in their meeting was: "how old are you?" *See* Vincent Martini Dep. Tr., attached hereto as Exhibit "K," at 26: 16–25.

44. Mr. Martini further claims that before he could answer Mr. Welsh, Mr. Welsh said "fifty-one" and asked Mr. Martini what he "was still doing here" at the Public Defender's Office.[1] *Id.*

45. In a subsequent meeting, Mr. Martini alleges that Mr. Welsh referred to another attorney, Harris Resnick as an "old man" and told Mr. Martini that he should take over a specific case from Mr. Resnick because it would be too challenging for him. *Id.* at 34: 12–25; 35: 1–17.

---

[1] The County notes that Mr. Welsh expressly denies asking Mr. Martini about his age. *See* Ex. B, Welsh Dep., at 25: 2–7. However, the County analyzes this evidence in the light most favorable to Plaintiff for the purposes of this motion for summary judgment only.

46. Interestingly, Mr. Martini also alleges that Mr. Welsh was concerned that certain cases Mr. Martini assigned to a younger attorney in his trial team would be too difficult for that attorney to handle as well. *Id.* at 36.

47. Mr. Martini testified to Mr. Welsh's alleged comments after filing his own age based discrimination claim. *See* Ex. C, Pl. Dep., at 160: 24–25; 161–162: 1–11.

48. However, Mr. Martini was terminated after numerous complaints were made about his unfair and disproportionate assignment of cases within his trial team. *See* Ex. K, Martini Dep., at 35: 18–25; 36–37; *see also* Ex. F, DiMatteo Dep., 17–20; *see also* Emails Between Christopher Welsh and Vincent Martini Regarding Mr. Martini's Termination, attached hereto as Exhibit "L."

49. Moreover, Mr. Martini specifically denies that he heard Mr. Welsh ever made any disparaging remarks about Plaintiff's age or disability. *Id.* at 26:13–15; 41: 8–15.

## VI. <u>PLAINTIFF'S TERMINATION</u>

50. Shortly after starting as Director, Mr. Papi and Mr. DiMatteo "expressed concerns about Leigh's ability to handle the workload of an appellate attorney competently." Ex. B, Welsh Dep., at 40.

51. Accordingly, Mr. Welsh asked Mr. Papi, as Plaintiff's direct supervisor, to assign Plaintiff a research project memorandum regarding preliminary hearings and whether they could be centralized. *Id.* at 38:8–24; 39–40; *see also* Emails Between Steven Papi and Plaintiff Regarding Preliminary Hearing Memorandum Assignment, attached hereto as Exhibit "M."

52. Plaintiff was assigned the memorandum on Monday, August 3, 2020 at 12:14 PM and was given until Monday, August 10, 2020 at the end of the day to submit it. *See* Ex. M.

53. Plaintiff submitted the memorandum on time, but due to several apparent issues with his scanner, submitted the finalized version on or around Tuesday, August 11, 2020. See Emails

from Plaintiff Regarding Preliminary Hearing Memorandum Submissions, attached hereto as Exhibit "N;" *see also* Ex. C, Pl. Dep., at 117–19.

54. Plaintiff testified that he spent approximately eight to ten hours per day for seven days, including both days of the weekend on the first memorandum assignment. Ex. C, Pl. Dep., at 115.

55. Plaintiff did not have any other work related responsibilities or assignments while he completed the assigned memorandum. *See id.*

56. Plaintiff submitted the assigned memorandum to Mr. Papi who forwarded it to Mr. Welsh for his review. *See* Ex. B, Welsh Dep., at 41–44; s*ee also* Plaintiff's Preliminary Hearing Centralization Memorandum, attached hereto as Exhibit "O."

57. Upon reviewing Plaintiff's memorandum, Mr. Welsh determined that Plaintiff's writing was below the acceptable standard of an attorney in the Public Defender's Office.

58. Specifically, Mr. Welsh testified that: "[t]he sentences were very unclear, sometimes incoherent, just not forming a logical reason, thoughts, or arguments. . . . There really wasn't much legal analysis. And from my my estimation was, my judgment was that the legal analysis was well below the standard that would be required of an attorney." Ex. B, Welsh Dep., at 41–44.

59. Mr. Welsh described the discussion about Plaintiff's memorandum with Mr. Papi as follows:

> I thought it is well below the standard. It would be something that -
> - I don't remember the exact words, but basically I thought the memo
> was, I think I used the word awful. And, yeah, I expressed my
> concerns about the quality of the writing.

*Id.* at 45:16–23.

60. On August 11, 2020 at 9:38 AM, Mr. Papi assigned another research project to Plaintiff regarding expungements, at the request of Mr. Welsh. *See* Ex. C, Pl. Dep., at 123: 4–14; *see also*

Email from Steven Papi to Plaintiff Regarding Expungement Memorandum Assignment, attached hereto as Exhibit "P."

61. Plaintiff's second memorandum was due Monday, August 17, 2020. *See* Ex. P.

62. Plaintiff testified that he spent eight to ten hours a day for six days researching and writing the second memorandum regarding expungements. *See* Ex. C, Pl. Dep., at 127

63. Plaintiff submitted his completed memorandum on Monday, August 17, 2020 at 9:23 AM. *Id.* at 128–129; *see also* Email from Plaintiff Regarding Expungement Memorandum Submission, attached hereto as Exhibit "Q."

64. Mr. Welsh and Mr. Papi reviewed Plaintiff's second assigned memorandum. *See* Ex. B, Welsh Dep., at 46–48.

65. Mr. Welsh testified:

> Q.   What was the problem with his sentence structure?
>
> A.   It was not intelligible and very hard to understand what point he was trying to communicate at a variety of points in the memo. I believe some of them weren't actually grammatically correct sentences but I haven't reviewed the memo since that time.
>
> Q.   What was the problem with his legal analysis?
>
> A.   What little legal analysis there was seemed to be very flawed and not actually answering the question presented.

*Id.* at 48: 13–24.

66. Mr. Papi had concerns with Plaintiff's "formatting and layout, not, you know, it was a lot of copying and pasting in those memos rather than explaining what expungement is in your own words, what citations to statutes. It was a lot of copy and pasting." Ex. I, Papi Dep., at 14–21.

67. Based on Plaintiff's poor writing ability as exhibited by his substandard memorandums, Mr. Welsh made the decision to terminate Plaintiff. *See id.* at 34; 35: 1–11; *see also* Plaintiff's Expungement Memorandum, attached hereto as Exhibit "R."

68. When asked whether Mr. Welsh told Mr. Papi why he wanted to terminate Plaintiff, Mr. Papi testified: "it was generally about the memos, that they weren't up to standard." *Id.*

69. Moreover, Mr. Papi explained:

> Q.    Did Welsh ever tell you why he thought it warranted immediate termination?
>
> A.    I think he made comments about we have clients we have to represent and he was concerned about the representation they would receive in general terms.

*Id.* at 37: 4–8.

70. August 17, 2020, Mr. Welsh emailed Plaintiff to come to his office for a meeting and requested that Mr. Papi also attend as a witness. *See* Ex. B, Welsh Dep., at 50.

71. Mr. Welsh told Plaintiff that his memoranda were not competent legal memoranda and fell below the standard expected of an attorney in the Public Defender's Office and offered Plaintiff the option to resign or be terminated. *See* Emails Memorializing Plaintiff's Termination Between Christopher Welsh and Steven Papi, attached hereto as Exhibit "S."

72. Plaintiff said that he wanted to be terminated. *See id.*

73. At no time during his employment did Plaintiff ever request or believe he needed an accommodation for his alleged disability. *See* Ex. C, Pl. Dep., 156: 17–24.

74. At no time did Mr. Welsh ever make any remarks or comments at all regarding Plaintiff's age or disability. *See id.*

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

Date: October 1, 2021                    By:   _____

John P. Gonzales, Esquire
Attorney for Defendants
Identification No.: 71265
2000 Market Street, 24th Floor
Philadelphia, PA 19103
(215) 575-2600
E-mail: jpgonzales@mdwcg.com

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEIGH J. BECHTLE | : | CIVIL ACTION NO.: 2:20-CV-05803 |
| | : | |
| vs. | : | |
| | : | JURY TRIAL DEMANDED |
| COUNTY OF DELAWARE | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, JOHN P. GONZALES, ESQUIRE, do hereby certify that a true and correct copy of our

Motion for Summary Judgment was electronically filed with the Court on the below date, and is

available for viewing and downloading from the ECF System.


**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**


Dated:  October 1, 2021          By: _____

JOHN P. GONZALES, ESQUIRE
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

LEIGH J. BECHTLE,                    :
                 Plaintiff,      :     CIVIL ACTION
                             :
       v.                        :     NO. 2:20-CV-05803
                             :
COUNTY OF DELAWARE,              :
                  Defendant.     :

---

**DEFENDANT, COUNTY OF DELAWARE'S INDEX OF EXHIBITS IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

| Exhibit Letter | Bates Stamped Number/ ECF Number | Document Description |
|---|---|---|
| A. | ECF No. 1 | Plaintiff's Complaint |
| B. | N/A | Christopher Welsh Deposition Transcript |
| C. | N/A | Plaintiff's Deposition Transcript |
| D. | DEFTS 000239 | Email to David DiPasqua Regarding Requested Conference with Judge Bradley |
| E. | DEFTS 000241 | Email from David DiPasqua to Douglas Roger Regarding Two Judges' Complaints Relating to Plaintiff's Representation of Clients |
| F. | N/A | Emilio DiMatteo Deposition Transcript |
| G. | P 0126 | Emails Between Plaintiff and David DiPasqua Regarding Judge Lowe Complaints |
| H. | P 0014 | Email from David DiPasqua to Emilio "Skip" DiMatteo Regarding Complaints Relating to Plaintiff's Representation |
| I. | N/A | Steven Papi Deposition Transcript |
| J. | P 0015 | See Email from Christopher Welsh Regarding Introduction and Zealous Advocacy |

| K. | N/A | Vincent Martini Deposition Transcript |
|---|---|---|
| L. | DEFTS 000324–28 | Emails Between Christopher Welsh and Vincent Martini Regarding Mr. Martini's Termination |
| M. | DEFTS 000185 | Emails Between Steven Papi and Plaintiff Regarding Preliminary Hearing Memorandum Assignment |
| N. | DEFTS 000110, 000140, 000163, 000174–75 | Emails from Plaintiff Regarding Preliminary Hearing Memorandum Submissions |
| O. | P 0017–26 | Plaintiff's Preliminary Hearing Centralization Memorandum |
| P. | P 0027 | Email from Steven Papi to Plaintiff Regarding Expungement Memorandum Assignment |
| Q. | DEFTS 000080 | Email from Plaintiff Regarding Expungement Memorandum Submission |
| R. | DEFTS 000081–104 | Plaintiff's Expungement Memorandum |
| S. | DEFTS 000068–69 | Emails Memorializing Plaintiff's Termination Between Christopher Welsh and Steven Papi |

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

Date:  October 1, 2021          By:

John P. Gonzales, Esquire
Attorney for Defendants
Identification No.:  71265
2000 Market Street, 24th Floor
Philadelphia, PA  19103
(215) 575-2600
E-mail:  jpgonzales@mdwcg.com