IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| LEIGH J. BECHTLE | CIVIL ACTION |
|---|---|
| v. | NO. 20-5803 |
| COUNTY OF DELAWARE | |

**MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                  **January 3, 2022**

Defendant County of Delaware has filed a Motion for Summary Judgment (ECF 17) in this case arising from alleged employment discrimination based on age and disability. Plaintiff Leigh J. Bechtle brings claims against Defendant for violating the Rehabilitation Act, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. Defendant seeks summary judgment on all claims. For the reasons that follow, the Court will deny Defendant's Motion.

**I.      Background and Procedural History**

Considering the undisputed facts, and the disputed facts considered in the light most favorable to Plaintiff as the non-moving party, the events giving rise to this case are as follows. Plaintiff is an attorney who began working for the Delaware County Public Defender's Office (PDO) in 2014 at age sixty-five. (MSJ, Statement of Facts ¶¶ 7–8.) Shortly after he began working at the PDO, Bechtle suffered a stroke. (Id. ¶ 9.) Bechtle was eventually able to return to work at the PDO, but he continues to be disabled on his left side, and his speech remains significantly impaired. (ECF 18; MSJ Resp., SoF ¶¶ 12–17.) Following his return to the PDO in 2015, Bechtle was assigned to the Juvenile Unit, in which he handled criminal cases against juveniles. (Id. ¶¶ 20–21.) In February 2020, Bechtle was transferred to the Appeals Unit. (Id. ¶¶ 32–35.)

In July 2020, the County hired Christopher Welsh to head the PDO. (MSJ, SoF ¶ 36.) In August 2020, Welsh instructed Steven Papi, the Chief of the Appeals Unit, to have Bechtle write

a memorandum on whether preliminary hearings could be centralized. (MSJ Resp., SoF ¶ 59.) Bechtle wrote and submitted the memorandum, which Welsh has stated he found to be substandard. (MSJ, SoF ¶¶ 51–59.) Welsh had Papi assign Bechtle a second writing assignment, which was to write a memorandum on whether the PDO should handle expungements. (MSJ Resp., SoF ¶¶ 64–65.) Welsh has stated that he found the second memorandum to be substandard as well. (MSJ, SoF ¶¶ 64–67.) After receiving the second memorandum, Welsh asked Bechtle to come to his office and told Bechtle that, because of the quality of Bechtle's legal writing, this would be Bechtle's final day. (Id. ¶¶ 67–71.) Welsh told Bechtle that he could either resign or be terminated. Bechtle chose to be terminated. (MSJ Resp., SoF ¶¶ 71–72.) Papi was present for this meeting. (Id. ¶ 70.)

Bechtle filed suit against the County of Delaware (ECF 1), alleging that Welsh's stated concerns with Bechtle's writing ability were pretextual and that he had actually been fired because of his age and disability. Plaintiff brings the following federal claims based on his termination:

1. **Count I**: Violation of the Rehabilitation Act, 29 U.S.C. § 794(b)(1);

2. **Count II**: Violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.; and

3. **Count III**: Violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq.

Defendant now seeks summary judgment against Plaintiff on all claims. Plaintiff filed a Response (ECF 18), which includes a statement of additional material facts. Defendant filed a Reply (ECF 20), as well as a response to Plaintiff's additional material facts (ECF 24).

## II.     Legal Standard

Summary judgment should be granted if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If a factual dispute "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id.  A grant of summary judgment is appropriate only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In deciding a motion for summary judgment, courts must "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015).  The moving party must identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's burden at the summary judgment stage can be met by showing the court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—that demonstrate the existence of a genuine triable dispute. Fed. R. Civ. P. 56(c).

**III.    Defendant's Motion**

    **a.  ADA and Rehabilitation Act Claims**

        **i.  Applicable Law**

"The 'substantive standards for determining liability [under the ADA and Rehabilitation Act] are the same.'"  Gibbs v. City of Pittsburgh, 989 F.3d 226, 229 (3d Cir. 2021) (quoting McDonald v. Pa. Dep't of Pub. Welfare, Polk Ctr., 62 F.3d 92, 95 (3d Cir. 1995)).  The Court may therefore "address both claims in the same breath."  Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009).

The ADA prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  When a plaintiff does not have direct evidence of disability discrimination, a three-part framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973), is used to determine liability.  Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996).  The initial burden is on the plaintiff to establish a prima facie claim.  To do this, a plaintiff must establish that 1) they are disabled, 2) they are otherwise qualified to perform the essential functions of the job with or without reasonable accommodations by the employer, and 3) they have suffered an adverse employment decision as a result of discrimination.  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing Gaul v. Lucent Techs., 134 F.3d 576, 580 (3d Cir.1998)).

Once a plaintiff has established a prima facie claim, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for the adverse employment action.  If the employer can provide evidence that would allow a reasonable factfinder to find that the adverse employment

action was made for a nondiscriminatory reason, the burden shifts back to the plaintiff to show that the proffered nondiscriminatory reason for the action was pretextual. A plaintiff can do this by either 1) presenting evidence that would allow a factfinder to disbelieve the employer's proffered nondiscriminatory reason or 2) presenting evidence that would allow a factfinder to find that illegitimate discrimination was more likely than not a motivating or determinative cause of the employer's action.

### ii. Discussion

Defendant argues that Plaintiff is unable to establish a prima facie disability discrimination claim. Defendant contends that Bechtle was not qualified to perform the essential functions of his job because, based on the submitted memoranda, he is unable to competently prepare legal documents. (MSJ Br. 4–6.) Defendant also argues that even if Plaintiff could establish a prima facie claim, he has failed to produce any evidence that would allow a reasonable factfinder to find that the proffered legitimate basis for Bechtle's termination—the quality of Bechtle's legal writing—was pretextual. (Id. at 8–10.)

Whether Bechtle was a good writer or bad writer is a subjective qualification that cannot prevent him from establishing a prima facie claim of disability discrimination. See Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990) ("[W]hile objective job qualifications should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to the later stage of the McDonnell Douglas analysis.")

Moreover, Plaintiff has produced evidence from which a reasonable factfinder could find that Bechtle was qualified for his position. David DiPasqua, who was the leader of Bechtle's trial team in the Juvenile Unit for five years, testified in his deposition that Bechtle's performance was

"fantastic." (MSJ Resp., Ex. 13 at 18:19–21.) Papi, who oversaw Bechtle in the Appeals Unit, testified in his deposition that Bechtle's performance on assigned appeals was unobjectionable. (Id., Ex. 6 at 24:1–9; 27:7–9.) Emilio DiMatteo, who served as Welsh's predecessor, testified in his deposition that he never heard of any clients complaining about the quality of Bechtle's representation. (Id., Ex. 19 at 34:2–18.) Plaintiff has therefore established that there is a genuine dispute of fact as to whether Bechtle was qualified for his position.

Plaintiff has also raised a genuine dispute of material fact as to whether the proffered legitimate basis offered for Bechtle's termination was pretextual. There are certain aspects of the proffered legitimate basis for Bechtle's firing that a reasonable factfinder may find odd. Welsh testified in his deposition that he decided to terminate Bechtle based on two memoranda that Bechtle wrote that Welsh found to be substandard. (Id., Ex. 9 at 41–54.) However, Welsh also testified that he provided no feedback on the first memorandum or otherwise made any effort at corrective action that might improve the quality of Bechtle's work. (Id.) Welsh also testified that within twenty-four minutes of receiving Bechtle's second memorandum, which was twenty-two pages long, he had read the memorandum and decided to terminate Bechtle. (Id. at 53:1–16.) A reasonable factfinder may doubt that Welsh could have read the memorandum and made this significant decision based, in part, on the memorandum in such a short period of time.

Additionally, according to an email between Welsh and Papi, Welsh told Bechtle during the meeting in which Bechtle was terminated that Bechtle had been demoted from the Juvenile Unit because his work was not up to minimum standards. (MSJ, Ex. S.) However, DiMatteo has testified that he was directly involved in Bechtle's transfer from the Juvenile Unit to the Appeals Unit and that it had nothing to do with the quality of Bechtle's work. (MSJ Resp., Ex. 19 at 34– 35.)

Although Plaintiff has not offered any evidence that his disability was a motivating factor in his termination, he has offered evidence that could cause a reasonable factfinder to disbelieve the proffered legitimate reason that Defendant has offered. The Court therefore find that summary judgment should not be granted for Plaintiff's ADA and Rehabilitation Act claims.

### b. ADEA Claim

#### i. Applicable Law

The ADEA provides in relevant part that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To prevail on an ADEA claim, "a plaintiff must establish, by a preponderance of the evidence, that age was the 'but-for' cause of the adverse employment action." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (citation omitted).

If an age discrimination claim relies on circumstantial evidence, as Plaintiff's does, a three-part burden shifting framework similar to that used in the disability discrimination context applies. The age discrimination framework differs from the disability discrimination framework only in what is required to establish a prima facie claim. To establish a prima facie age discrimination claim, a plaintiff must show that 1) they are at least forty years old, 2) they suffered an adverse employment decision, 3) they were qualified for the position in question, 4) they were replaced by an employee sufficiently younger than the plaintiff so as to support an inference of discrimination. The fourth element can alternatively be satisfied "if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" Id.

### ii. Discussion

Defendant argues that Plaintiff cannot establish a prima facie age discrimination claim because he has not provided evidence that would allow a reasonable factfinder to find, under the fourth element, that the termination was based on the consideration of Bechtle's age. (MSJ Br. 11–13.) Defendant further contends that for this same reason, Plaintiff cannot establish that the proffered legitimate reason for Bechtle's termination was pretextual. (Id. at 14–16.)

Although Plaintiff was not replaced by a younger worker, he has provided evidence that may indicate that his age was a factor in his termination. Vincent Martini, another former PDO employee, testified in his deposition that Welsh questioned why Martini, who was fifty-one years old, was still working in the PDO. (MSJ Resp., Ex. 7 at 26:16–25.) Martini also testified that Welsh questioned why Martini would assign an "old man"—Harris Resnick, an attorney on Martini's trial team—a case that Welsh said Resnick was incapable of handling. (Id. at 34:3–35:5.) In a similar vein, DiPasqua testified that Welsh questioned why DiPasqua still wanted to work in the PDO after two decades. (Id., Ex. 13 at 31:22–32:18.) DiPasqua testified as well that Welsh was "getting rid of the older employees and bringing in newer ones," which may suggest a pattern that could support a finding of age discrimination. (Id. at 18:19–21.)

These statements are not the only evidence relevant to this point; a reasonable factfinder must also consider the evidence previously discussed with regard to Plaintiff's disability discrimination claim. Viewing this evidence as a whole, a reasonable factfinder might conclude that the quality of Bechtle's work was not the genuine reason for his termination. In determining what the genuine reason for Bechtle's termination was, a reasonable factfinder might further conclude that Bechtle was targeted because of his age. Plaintiff has therefore raised a genuine

dispute of material fact on this issue. Based on this same evidence, Plaintiff has raised a genuine dispute of material fact as to whether the proffered reason for his termination was pretextual.

Because there are genuine disputes of material fact regarding Plaintiff's ADEA claim, the Court finds that summary judgment should not be granted.

**IV.    Conclusion**

For the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment. An appropriate Order follows.

O:\CIVIL 20\20-5803 Bechtle v. County of Delaware\20cv5803 Memorandum re MSJ.docx